UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORI CHAVEZ-DEREMER,
SECRETARY OF LABOR, U.S.
DEPARTMENT OF LABOR,

                Plaintiff,

v.

STERLING PONDS PLAZA, LLC
*et al.*,

                Defendants.

_____/

Case No. 24-11758

Gershwin A. Drain
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

## ORDER DENYING DEFENDANTS' MOTION TO COMPEL (ECF No. 38)

Pending before the Court is Defendants' *Motion to Compel* (ECF No. 38).[1]

The District Judge referred this motion to the undersigned. (ECF No. 40). The

motion is fully briefed and ripe for adjudication. (ECF Nos. 45, 47). Having

reviewed the parties' briefing, the motion is **DENIED**.

## I.     BACKGROUND

The genesis of the instant motion to compel arose back in 2018 when the

Secretary of Labor ("Secretary") filed a civil action against Defendants Sterling

---

[1] For the purposes of discovery, this case was consolidated with *Su v. Sterling Ponds Plaza, LLC et al.*, Case No. 2:18-cv-10888-GAD-CI. (ECF No. 20). Accordingly, an identical motion to compel and identical briefing was filed by the parties in each case. Unless otherwise indicated, citations to the record are to docket entries in the 2024 case. When referring to the record in the 2018 case, the Court will cite the document as "(2018 Case, ECF No. #)."

Ponds Plaza, LLC and Kiriakos Vlahadamis for alleged violations of the Fair Labor Standards Act ("FLSA").[2] (2018 Case, ECF No. 1). Ultimately, the parties agreed to a Consent Judgment that required the 2018 Defendants to pay modest back wages, liquidated damages, and civil monetary penalties. (ECF No. 38, PageID.311) (describing the 2018 Consent Judgment). Under the Consent Judgment, Defendants Sterling Ponds and Vlahadamis voluntarily agreed to comply with the FLSA's requirements. (*Id.*).

In July 2024, the Secretary initiated a new civil action against the 2018 Defendants as well as three new actors—Clarkston Restaurant, Inc.; Dearborn Plaza Coney Island, Inc.; and Stass Restaurant, Inc. (ECF No. 1). None of the new Defendants were parties to the 2018 Consent Judgment. On the same day, the Secretary moved to reopen the 2018 case to file a Motion for Contempt against Defendants Sterling Ponds and Vlahadamis for violating the 2018 Consent Judgment. (2018 Case, ECF Nos. 9, 10).

The bases for the Secretary's actions are the alleged willful failure to pay employees proper overtime wages and failure to keep adequate time records of employees' hours worked. (ECF No. 45, PageID.468). In the Complaint of the

---

[2] The case captions for the 2018 and 2024 case indicate that Plaintiff is Acting Secretary of Labor Su. Now—and at the time Defendant filed the motion compel—Lori Chavez-DeRemer is the Secretary of Labor. Though the case caption has not been formally amended to reflect the change in leadership, the latest Order on the docket names Secretary Chavez-DeRemer as the plaintiff. (ECF No. 49). The undersigned follows suit here.

2024 action, the Secretary alleges that Defendants kept two sets of timecards, one recording fewer than forty hours per week, and the other showing overtime hours worked.  (ECF No. 38, PageID.313; ECF No. 45, PageID.467).  Defendants would allegedly destroy the timecards at the end of each pay period.  (ECF No. 38, PageID.313; ECF No. 45, PageID.467).

Shortly after the Secretary initiated the 2024 case, Defendants voluntarily agreed to a Preliminary Injunction and Order that required Defendants to make, keep, and preserve adequate records of all time worked; the injunction and order also prohibited Defendants from destroying or altering such records.  (ECF No. 38, PageID.312) (citing ECF No. 10, PageID.158–61).  Defendants also agreed not to communicate with any of their employees about this case without first informing them of the existence of the 2024 action and that federal law prohibits discrimination or retaliation for choosing to discuss or not discuss the issues in the case.  (*Id.*).  Aside from these measures, Defendants voluntarily agreed to post a "Notice to All Employees" in each of the restaurants that specifically advised employees of the Preliminary Injunction and Order; the notice also expressly stated that employees would not be retaliated against in any way "for speaking to the Department of Labor, providing information to the Department of Labor, or testifying as a witness in this matter."  (*Id.*; ECF No. 38-2).

The allegations undergirding the Secretary's actions derive from witness statements provided to the Department of Labor ("DOL").  (ECF No. 38, PageID.313).  When Defendants served written discovery requests designed to identify those who provided statements to the DOL, the Secretary refused to do so, invoking the government informant's (or government informer's) privilege and the investigative files privilege.  (ECF No. 38-5, PageID.419–22, 433–41) (regarding Interrogatory Nos. 2–5, 9–11, and 13–16).  The Secretary also did not identify any particular current or former employees with her Rule 26(a) disclosures.  (ECF No. 25).  Instead, the Secretary named "Defendants' Current and Former Employees" and invoked the informant's privilege.  (*Id.* at PageID.230, n.1).

Defendants subsequently attempted to obtain, among other things, the identities of *former* employees who gave witness statements to the DOL.  The Secretary refused to do so absent a Court order.  (ECF No. 38, PageID.318).  Defendants next tried to obtain the identities and unredacted witness statements of those individuals who specifically permitted the DOL to disclose their identities; again, the Secretary refused.  (*Id.*).  The instant motion followed.

Defendants insist that they need the identities of the informants—as well other related information—to adequately defend themselves against the incendiary allegations levied against them.  This is particularly the case, Defendants argue, because the DOL's media campaign around this case has resulted in threats of

physical violence (including gun violence) against Defendant Vlahadamis as well as anonymous, harassing letters that were sent to Vlahadamis's wife, parents, neighbors, and priest. (*Id.* at PageID.314).

To that end, Defendants request an order from the Court that compels the Secretary to: (1) supplement her witness list to identify the former employees of Defendant restaurants who are witnesses here; (2) provide unredacted witness statements for all former employees of Defendant restaurants who provided statements to the DOL; and (3) supplement her responses to Interrogatory Nos. 2–5, 9–11, and 13–16 to identify those former employees who have information relevant here, gave statements in connection with this case, are allegedly owed unpaid wages and overtime, and may be called as witnesses at trial. (*Id.* at PageID.310). Defendants especially emphasize that disclosure is warranted for those witnesses who consented to the disclosure of their identities. (*Id.* at PageID.311). They also want an award of fees and costs for filing this motion. (*Id.* at PageID.324–25).

## II. ANALYSIS

Defendants' sole contention is that they are entitled to relief because the informant's privilege must yield in favor of disclosure. The Court disagrees.

### A. Governing Standards

5

Parties may obtain discovery related to any nonprivileged matter relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Fed. R. Civ. P. 26.  Information within this scope of discovery need not be admissible in evidence to be discoverable.  *Id.*  "Although a [party] should not be denied access to information necessary to establish her claim, neither may a [party] be permitted to 'go fishing,' and a trial court retains discretion to determine that a discovery request is too broad and oppressive."  *Superior Prod. P'ship v. Gordon Auto Body Parts Co.*, 784 F.3d 311, 320–21 (6th Cir. 2015) (citing *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)).  A party seeking discovery may move for an order compelling an answer, designation, production, or inspection.  Fed. R. Civ. P. 37.

### B.    Government Informant's Privilege

Any discussion of the government informant's (or government informer's privilege) begins with the privilege's origins in *Roviaro v. United States*, 353 U.S. 53 (1957).  In essence, this privilege is "the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of

6

law to officers charged with the enforcement of that law." *Id.* at 59. "The purpose of this privilege is the furtherance and protection of the public interest in law enforcement." *Id.*

This purpose, however, limits the scope of the privilege thereby rendering it a qualified privilege, not an absolute one. *Id.* at 60; *see also Holman v. Cayce*, 873 F.2d 944, 946 (6th Cir. 1989) (citation omitted). For instance, "once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable." *Roviaro*, 353 U.S. at 60; *see also United States v. Julius Doochin Enters., Inc.*, 370 F. Supp. 942, 944–45 (M.D. Tenn. 1973) ("Thus, where disclosure has already been divulged, where disclosure is inevitable because the informer is to be a witness at trial (but note that this apparently must be proximate in time to the trial), or where disclosure of a person's identity would not label him necessarily as an informer . . . the privilege does not apply or is set aside.").

The "fundamental requirements of fairness" impose further limitations on the privilege's applicability. *Roviaro*, 353 U.S. at 61. That is, "[w]here the disclosure of an informer's identity, or of the contents of his communication is relevant and helpful to the defense of the accused, or is essential to the determination of a cause, the privilege must give way." *Id.* Even so, there is "no fixed rule with respect to disclosure." *Id.* Rather, the determination whether

7

disclosure is proper depends on "balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id.* at 61–62; *see also Holman*, F.2d at 946.  Such balancing, in turn, necessarily depends "on the particular circumstances of each case." *Roviaro*, 353 U.S. at 62.

Though *Roviaro* described the government informant's privilege in the context of a criminal case, federal courts have extended the privilege to civil actions.  *See, e.g.*, *Holman*, F.2d at 946 (citing *Hampton v. Hanrahan*, 600 F.2d 600, 637 (7th Cir. 1979), *rev'd on other grounds*, 466 U.S. 754 (1980)).  Indeed, the privilege "has been invoked frequently in FLSA cases." *Perez v. Los Arcos Seafood & Grill, Inc.*, No. 3:12-cv-01133, 2016 WL 1029519, at *5 (M.D. Tenn. Mar. 9, 2016) (citing cases); *see also Solis v. Delta Oil Co., Inc.*, No. 1:11-cv-233, 2012 WL 1680101, at *2–6 (S.D. Ohio May 14, 2012) (analyzing the informant's privilege in the context of a FLSA action); *Brock v. On Shore Quality Control Specialists, Inc.*, 811 F.2d 282, 283 (5th Cir. 1987) (collecting cases).[3]  Importantly here, "the [informant's] privilege applies to both current and former employees of a company whose workers have communicated with the Department of Labor."

---

[3] The Sixth Circuit has not expressly applied the government informant's privilege to a FLSA case.  *See Solis*, 2012 WL 1680101, at *2 n.2.  That said, the Sixth Circuit did discuss the informant's privilege in the context of the FLSA when determining that the term "employee" in the FLSA covered both current and former employees.  *See Dunlop v. Carriage Carpet Co.*, 548 F.2d 139, 146–47 (6th Cir. 1977).

*Solis*, 2012 WL 1680101, at \*2 (citing *Hodgson v. Charles Martin Inspectors of Petroleum, Inc.*, 459 F.2d 303, 305–06 (5th Cir. 1972))

Whether the privilege is invoked in civil or criminal matter is integral to the balancing of interests.  "In the context of civil litigation, the emphasis shifts from consideration of whether disclosure is necessary to an accused's defense to whether disclosure is essential to the fair determination of a party's cause." *Holman*, 873 F.2d at 946.  Thus, "as a practical matter, consideration of the circumstances involved in civil litigation will usually mean that the privilege is less likely to give way in a civil action." *Id.* at 946–47 (citation omitted).  In FLSA cases involving the informant's privilege, "the interests to be balanced . . . are the public's interest in efficient enforcement of the Act, the informer's right to be protected against possible retaliation, and the defendant's need to prepare for trial." *Solis*, 2012 WL 1680101, at \*3 (citing *Charles Martin*, 459 F.2d at 305).

After the government has asserted the informant's privilege, the party moving for disclosure "bears the burden of showing a compelling need for the information sufficient to overcome the privilege." *Id.* at \*3; *see also, e.g.*, *United States v. Sanchez*, 908 F.2d 1443, 1451 (9th Cir. 1990) (holding that mere suspicion or speculation that disclosure would be helpful is insufficient) (citations omitted); *Dole v. Local 1942, Int'l Bhd. of Elec. Workers, AFL-CIO*, 870 F.2d 368, 373 (7th Cir. 1989) (determining that party opposing the privilege must show a

"credible need for the information in order to defend itself in the action—a need greater than the important policy consideration underlying the privilege"); *Schultz v. Farino Excavating Co.*, 55 F.R.D. 346, 347 (E.D. Mich. 1972) (indicating the privilege yields to disclosure only in "special circumstances").

### C.   Discussion

Defendants assert that the balance of interests here favors disclosure.  In doing so, they rely exclusively on the Northern District of Mississippi's decision in *Su v. Battle Fish N.*, Civ. Action No. 3:23-cv-348-MPM-RP, 2024 WL 336638 (N.D. Miss. July 10, 2024).  (ECF No. 38, PageID.321–23).  Defendants also refer to three factors that they say favor disclosure, namely that: (1) Defendants only seek supplemental information regarding former employees; (2) the Preliminary Injunction and Order and Notices mitigate the potential for retaliation; and (3) at least two witnesses have given the DOL permission to disclose their identities.  (*Id.* at PageID.322–23).  As *Battle Fish* provides a good starting point, that is where the Court will begin.[4]

#### 1.   The *Battle Fish* Court

---

[4] Typically, the analysis would begin with a determination as to whether the Secretary followed the formal requirements for invoking the informant's privilege.  *See Perez v. Am. Future Sys., Inc.*, Civil Action No. 12-6171, 2013 WL 5728674, at *3 (E.D. Pa. Oct. 21, 2013). Here, Defendants did not address whether the Secretary properly invoked the privilege and focused entirely on the balance of interests.  Even after the Secretary stated that it properly invoked the privilege, (ECF No. 45, PageID.486–87), Defendant did not offer any argument in rebuttal.  As such, the Court will assume the Secretary properly invoked the informant's privilege.

Notably, Defendants rely on the *Battle Fish* Court's denial of a motion for reconsideration rather than the orders that prompted that motion. *See Battle Fish*, 2024 WL 3366338, at *1 (referring to the court's orders granting in part and denying in part the then-Acting Secretary's motion for a protective order and the defendants' motion to compel). Because the *Battle Fish* Court actually balanced the interests at issue in its order on the motion for a protective order, the Court will focus on that analysis here. *See Su v. Battle Fish N.*, 3:23-cv-00348-MPM-RP, Doc. No. 64, at *2–9 (N.D. Miss. May 20, 2024).

In *Battle Fish*, the then-Acting Secretary alleged two violations of the FLSA. Specifically, she raised claims for "(1) the defendants' alleged interference with an investigation being conducted by the [DOL's] Wage and Hour Division ("WHD") into the defendants' compliance with the wage and hour provisions of the [FLSA]";[5] and "(2) the defendants' alleged retaliation against workers cooperating in that investigation." *Id.* at *1. According to the then-Acting Secretary's complaint, the defendants intimidated workers; hid evidence from investigators; provided false testimony to investigators; and threatened to harm, deport, or fire employees who cooperated with the DOL's investigation. *See id.* at *2. There, just as here, the then-Acting Secretary invoked the informant's privilege; to that

---

[5] This also included alleged violations of the H-2A provisions of the Immigration and Naturalization Act.

end, she moved for a protective order to shield the identities of workers who spoke to investigators.  *See id.*

In balancing the interests, the *Battle Fish* Court weighed the same three factors mentioned above—the public's interest in efficient enforcement of the FLSA, the informer's right to be protected against retaliation, and the defendant's need to prepare for trial.  *See id.* at *3 (citing *Brock*, 811 F.2d at 284); *Solis*, 2012 WL 1680101, at *3.  Ultimately, the court determined that the balancing favored disclosure.  *See id.* at *9.  While Defendants here insist that *Battle Fish* requires the same outcome, the Court finds that *Battle Fish* offers greater support for the Secretary's position.

  a.  *The Public's Interest in Efficient Enforcement of the FLSA*

The *Battle Fish* Court concluded that this factor favored the then-Acting Secretary.  It noted that the efficient enforcement of the FLSA "'is highly dependent on the cooperation of, and statements given by, employees.'"  *Id.* at *5 (quoting *Brennan v. Engineered Prods., Inc.*, 506 F.2d 299, 302 (5th Cir. 1974)).  The court then observed that such cooperation hinges on the government's assurance of confidentiality.  *Id.*  To that end, the court stated the following:

> "The average employee involved in this type of action is keenly aware of his dependence upon his employer's good will, not only to hold his job but also for the necessary job references essential to employment elsewhere.  Only by preserving their anonymity can the government obtain the information necessary to implement the law properly."

12

*Id.* (quoting *Brennan*, 506 F.2d at 302); *see also Wirtz v. B.A.C. Steel Prods., Inc.*, 312 F.2d 14, 16 (4th Cir. 1962)).

The same factor weighs in the Secretary's favor here.  Defendants did not address this factor or otherwise contest how crucial the informant's privilege is to efficient enforcement of the FLSA.  Nor did Defendants respond to the Secretary's assertion that the privilege is "the cornerstone of the FLSA's enforcement scheme."  (ECF No. 45, PageID.471) (quoting *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960) (stating that "'effective enforcement' of the FLSA can 'only be expected if employees [feel] free to approach officials with their grievances.'").  And as indicated above, *Battle Fish* supports the Secretary on this factor.

> b.  *The Right of Cooperating Workers to be Protected Against Possible Retaliation*

In *Battle Fish*, this factor favored the movants.  Despite concerning allegations of threats of retaliation, the court determined that the existing preliminary injunction mitigated such threats.  This was because the injunction "specifically enjoin[ed] the defendants and their agents from interfering in any WHD investigations, and from retaliating or discriminating against any current or former workers who cooperate[d] with WHD's investigation."  *Battle Fish*, Doc. No. 64, at *6.  The preliminary injunction also "enjoin[ed] the defendants and their

agents from interrogating, inquiring about, or discussing with any of their current or former workers the workers' communications with WHD investigators." *Id.* Since the injunction "significantly reduce[d] the risk of retaliation against cooperating workers who may be identified," the movants prevailed on this aspect of the balancing test.

There is a similar preliminary injunction in place here—one to which Defendants voluntarily agreed. The Preliminary Injunction and Order the parties agreed to contain similar anti-retaliation provisions, a fact the Secretary concedes. (ECF No. 10, PageID.159–60; ECF No. 45, PageID.479 ("[T]he preliminary injunction the parties ultimately agreed to contains anti-retaliation provisions[.]")). Defendants also voluntarily posted a "Notice to All Employees" at each of the restaurants at issue that states:

> The [FLSA] also protects your right to participate freely in the U.S. Department of Labor's investigation and litigation. You have the right to speak freely with investigators, attorneys, or other officials from the Department of Labor. It is illegal for your employer to fire you, withhold wages, reduces your wages or your hours, threaten to call immigration authorities—*or otherwise retaliate against you in any way*—for speaking to the Department of Labor, providing information to the Department of Labor, or testifying as a witness in this matter.

(ECF No. 38-2, PageID.373). And unlike *Battle Fish*, there are no allegations of retaliation here. (ECF No. 47, PageID.617–18) (pointing out the absence of allegations of retaliation).

14

The Preliminary Injunction and Order and Notice to All Employees "significantly reduce[ ] the risk of retaliation against cooperating workers," especially given the lack of retaliatory allegations. *Battle Fish*, Doc. No. 64, at *6. The Secretary tries to argue otherwise, asserting that the preliminary injunction is irrelevant to her invocation of the informant's privilege. (ECF No. 45, PageID.478–82). She suggests that the factual differences—namely the allegations of individualized interference and retaliation in *Battle Fish*—distinguish this case about the alleged destruction of timecards from *Battle Fish*. But the Northern District of Mississippi's analysis focused on the anti-retaliatory mechanisms in place that reduced the risk of possible mitigation, despite its concerns with the allegations of retaliation. Considering the lack of such allegations, the anti-retaliatory mechanisms here sufficiently insulate current and former employees from possible retaliation.[6]

c.    *Defendants' Need to Prepare for Trial*

Defendants contend that the sought after discovery is needed to adequately prepare for trial and defend themselves from the allegations levied against them. (ECF No. 38, PageID.322) ("[Because] the Secretary is refusing to identify any of

---

[6] The Secretary is correct that the successful invocation of the informant's privilege does not require "'a threshold showing that reprisal or retaliation is likely.'" (ECF No. 45, PageID.476) (quoting *Local 1942*, 870 F.2d at 372). Even so, the anti-retaliatory mechanisms present in this case reduce the risk of any potential retaliation. *See Battle Fish*, Doc. No. 64, at *6.

the individuals who have made such allegations, including even former employees,

[ ] Defendants have been denied any opportunity to take meaningful discovery on

this issue.").  They also assert that the Secretary's invocation of the informant's

privilege has obscured the amount of back wages allegedly owed and to whom

they are owed thereby obfuscating their ability to gauge the scope of the

Secretary's allegations.  (ECF No. 47, PageID.615–16).

The Secretary, in response, says that Defendants already have all of the

relevant information available to them.  Since this case is all about Defendants'

own documents, records, and actions, the argument goes, Defendants have all the

information needed to speak with current and former employees about the

allegations here.  (ECF No. 45, PageID.471–72) ("[Defendants] know the identities

of all of their employees and can independently interview or depose these

employees about Defendants' pay and recordkeeping practices.") (collecting case).

The Secretary also cited authority indicating that any arguments about the

impracticality of conducting interviews or depositions based on the size of the

employee witness pool lack merit.  (*Id.* at PageID.473–74).

The Secretary also points out that Defendants "already possess the redacted

versions of the employee interview statements" which "contain information

regarding how workers were paid—including whether they received overtime—

and what they observed in the workplace." (*Id.* at PageID.474).  In short, the

Secretary's position is that Defendants have everything they need to prepare their case such that disclosure prior to the final pretrial order is unwarranted.

On this matter, *Battle Fish* favors the Secretary, contrary to Defendants arguments.  There, the court held that the defendants' need to prepare for trial weighed in favor of disclosure.  But that was because the then-Acting Secretary sought relief for alleged interference and retaliation, not an action for alleged wage and hour violations and record keeping violations.  Doc. No. 64, at *7.  Because the then-Acting Secretary's briefing focused only on the latter type of cases, the court found in favor of the movants.  Indeed, the court remarked that:

> [t]he Fifth Circuit recognized there simply is not a need for a defendant to know informers' identities in [wage and hour violation or record keeping violation] cases, in which the informers are not necessary witnesses, and in which the facts needed to prove the Secretary's claims—wage and hour data—are as much within the defendant employer's knowledge as within the Secretary's.

*Id.* at *7.

In coming to this conclusion, the *Battle Fish* Court quoted at length from the Fifth Circuit's decision in *Wirz v. Continental Finance & Loan Co. of West End*, 326 F.2d 561 (5th Cir. 1964), a case involving alleged overtime and record keeping violations.  There, the Fifth Circuit stated the same argument the Secretary makes here:

> "It is perfectly plain that the names of informers are utterly irrelevant to the issues to be tried by the trial court.  The question is whether, with respect to certain employees, the [FLSA's] requirements as to

17

payment of hourly wages were violated. What possible difference
does it make who reported to the Secretary that violations had
occurred? It is entirely possible that the Secretary's entire case could
be proved by the use of a single witness, such as a bookkeeper or a
supervisor. However, it may be that ten or twelve employees may
have reported or informed as to alleged violations. In such
circumstances the only conceivable need for the names of the
informers would be the desire of the employer to know who had
informed on it. This is not a relevant issue to the cause before the trial
court."

*Id.* at 8 (quoting *Cont'l Fin.*, 326 F.2d at 563).

The *Battle Fish* Court concluded that disclosure was warranted because the allegations of interference and retaliation were specific to individual employees, therefore rendering the informers' identities relevant, necessary, and essential to a fair determination of the case. *Id.* at *9 ("Unlike in the wage and hour cases . . . the facts the Acting Secretary must prove to support her claims—which facts the defendants deny—are not as much within the defendants' knowledge as within the Acting Secretary's.").

Since the issues in the 2018 and 2024 cases relate to wage and hour issues as well as record keeping issues—and not allegations of interference and retaliation—this factor favors the Secretary according to *Battle Fish*. *See id.* at *6–9. This is especially so because the Secretary has already provided witness statements detailing the substance of the informant's knowledge while concealing any identifying information.

Defendants' attempts to escape this conclusion are unavailing.  For instance, Defendants argue that this case, like *Battle Fish*, involved the alleged "interference" with employees' rights under the FLSA.  (ECF No. 47, PageID.616–17).  But this argument paints with too broad a brush.  The allegations in *Battle Fish* were materially different from the allegations here.  The *Battle Fish* Court rejected the then-Acting Secretary's arguments because *Battle Fish* did not involve wage and hour violations or record keeping violations.  Yet those are the exact type of FLSA violations alleged here.  As Defendants themselves recognize, this case does not involve allegations of retaliation, let alone allegations similar to those in *Battle Fish*.  *Compare Battle Fish*, Doc. No. 64, at *2 (describing the alleged interference as intimidation of workers; threats of harm; and threats to harm, deport, or fire cooperating workers) *with* (ECF No. 1) (alleging a scheme to avoid paying overtime wages involving destroying timecards).  When one looks beyond the order resolving the motion for reconsideration and examines the *Battle Fish* Court's actual balancing of the interests, it is apparent that this factor weighs in the Secretary's favor.

Defendants also posit that interviewing or deposing its former witnesses is an impractical suggestion given the size of that prospective witness pool.  (ECF No. 47, PageID.619–20) (referring to a prospective witness pool consisting of hundreds of witnesses especially because of the high turnover rate in the restaurant

industry).  But the Secretary provided authority that undercuts such an argument.
She cites primarily the decision in *Perez v. American Future Sys.tems, Inc.*, 2013
WL 5728674.  There, the potential witness pool consisted of 1,800 aggrieved
employees, yet the court did not find the defendants' efficiency argument
compelling.  Instead, the court observed that "efficiency is generally not
considered a sufficient reason to pierce the informer's privilege, even when the
size of a witness pool makes it unlikely that a defendant would practically be able
to interview each potential witness.  2013 WL 5728674, at *5; *see also Perez*, 2016
WL 1029519, at *11 (citing *Am. Future Sys., Inc.*, 2013 WL 5728674, on
efficiency being insufficient to warrant disclosure); *Chao v. Raceway Petroleum,
Inc.*, Civil Action No. 06–3363(JLL), 2008 WL 2064354, at *4 (D.N.J. May 14,
2008) (stating that "a claim of efficiency on its own it not 'weighty enough to
overcome the public policy against disclosure'" where there were potentially 600
employee witnesses) (citation omitted).

Defendants offer no more than the very feasibility argument that other courts
have rejected.  Though disclosure of the informants' identities would certainly
facilitate Defendants' investigation, "facilitation is not a requirement for
fundamental fairness to defendant[s]." *Charles Martin*, 459 F.2d at 307.

Defendants attempt to differentiate the circumstances here from those in the
cases cited above because they only seek supplemental discovery responses

regarding former employees.  (ECF No. 47, PageID.619–20).  But they did not refer to any authority that would suggest that the efficiency argument bears greater weight when the witness pool at issue only covers former employees.  Nor did Defendants refer the Court to authority that renders the above-cited cases inapplicable simply because Defendants only want information pertaining to former employees.  This is a glaring omission considering the informant's privilege protects current and former employees alike.  *See infra* Subsection II.C.2.  And in any event, the possible witness pool is already smaller since Defendants do not seek information about current employees.

At bottom, *Battle Fish* supports the Secretary on this aspect of the balancing test, not Defendants.

### 2.  Identities of Former Employee-Informants

Defendants further posit that the informant's privilege must yield here because they only want information relative to former employees.  They argue that "former employees of a small restaurant franchise will have much less concern with retaliation than current employees will, and thus the balance of factors weighs in favor of the privilege giving way."  (ECF No. 38, PageID.324).

The Court does not agree that the balancing of interests here favors disclosure merely because Defendants limited their motion to former employees.  As mentioned, the informant's privilege protects current and former employees

21

alike.  *See Solis*, 2012 WL 1680101, at *3 (citing *Charles Martin*, 459 F.2d at

305).  The Sixth Circuit has recognized as much.  *See Dunlop*, 548 F.2d at 145–46

(citing *Charles Martin*, 459 F.2d at 306).  In *Charles Martin*, the district court's

sentiments mirrored those of Defendants here; it said:

> The need to shield the identity of former employees is not significant,
> as the possibility of retaliation is remote and speculative.  Therefore,
> plaintiff's ephemeral interest in secrecy on this point must yield to
> defendant's more substantial interest in preparing its defense.

*Id.* (citation modified).  But the Fifth Circuit reversed, finding that former

employees can face the same risk of retaliation as current employees.  *Charles*

*Martin*, 459 F.2d at 306 (describing possible examples of retaliation against former

employees).  Thus, "[t]here is no ground for affording any less protection to

defendant's former employees than to its present employees."  *Dunlop*, 548 F.2d at

146 (citing *Wirtz*, 312 F.2d at 14–16).

    To the extent that Defendants contend that the balance of interests favors

disclosure because of the informant's status as a former employee, the Court is not

convinced.  If anything, it is the anti-retaliatory mechanisms in place that reduce

the risk of retaliation, not an informant's status as a current or former employee.

*See supra* Subsection II.C.1.b.

### 3.    Informants who Approved Disclosure

    This leaves Defendants argument that, at the very least, the Secretary should

be compelled to disclose the identities of those informants who gave the DOL

22

permission to disclose their identities.  The Court understands the intuitive appeal of this position.  Even so, the Court is not persuaded that disclosure of these employees' identities is warranted now.

As the Secretary points out, the informant's privilege belongs to the Government, not the informant.  *See Roviaro*, 353 U.S. at 59; *Garcia v. Berkshire Nursery & Supply Corp.*, 705 F. Supp. 3d 188, 193 (S.D.N.Y. 2023) (quoting *SEC v. Thrasher*, No. 92 Civ. 6987 (JFK), 1995 WL 92307, at *5 (S.D.N.Y. Mar. 7, 1995)) ("It is axiomatic 'that the informant's privilege belongs to the Government and not to the informant.'").  The decision to conceal or disclose informants' identities rests with the Government, and here the DOL invoked the privilege.

Even so, Defendants insist that this should not matter because the informants' willingness to have their identity disclosed should move the balance of interests in favor of disclosure.  (ECF No. 47, PageID.619) (citing *Roviaro* and *Battle Fish*).  As an initial matter, Defendants did not cite authority suggesting that the informant's privilege is diminished where the Government invokes the privilege despite an informant's consent to disclose his identity; *Battle Fish* did not involve such circumstances.  Nor does the Court agree that *Battle Fish* supports Defendants' position.  Consent to disclosure does not alter the public's interest in efficient enforcement of the FLSA or change the potential for retaliation here.  It also does not augment Defendants' need for the information.  After all, the claims

23

at issue still involve wage and hour violations and record keeping violations—

according to the *Battle Fish* Court, these sorts of claims do not warrant disclosure.

And at any rate, the Secretary argues that the informants referenced here

only consented to a limited disclosure of their identity.  According to the

"Permission to Use Name Statement" ("PTUN") forms in the record, the

informants "authorize[d] the representative(s) of the Department of Labor, Wage

and Hour Division (WHD) to use my name and the Information in my statement *to

the extent necessary to enforce my rights under the Acts Administered by the WHD

in <u>negotiations</u> with*" various Defendants.  (ECF No. 45-1, PageID.538,

PageID.543, 546) (emphases added).  To that end, the Secretary asserts that the

PTUN forms authorize disclosure in relation to settlement negotiations; and since

the matter is before the Court on a motion to compel, the PTUN forms do not

authorize disclosure.

Defendants did not address this argument in their reply brief.  Perhaps these

informants believed their assent to disclosure extended beyond settlement

negotiations.  Perhaps not.  Since the Court does not find that the balance of

interests favor disclosure here and the scope of the PTUN appears limited to

settlement negotiations (a proposition Defendants did not contest), the Court will

not compel disclosure here.

### D.    Investigative Files Privilege

Based on the above analysis, the Court finds that the balance of interests favors the Secretary, so her invocation of the informant's privilege is upheld. That is, Defendants have not shown there is a compelling need that warrants disclosure of the informants' identities at this time. *See supra* Section II.C. Even if the Court came to a different conclusion, Defendants still would not obtain much of the relief they seek. In response to the Interrogatories at issue, the Secretary also invoked the investigative files privilege. (ECF No. 38-5, PageID.419–22, PageID.433–41; ECF No. 45, PageID.469 n.1 (referring to other privileges the Secretary invoked that Defendants did not address)). But Defendants did not address this separate privilege in their briefing.

Without addressing the propriety of the investigative files privilege under the circumstances here, there is no reason for the Court to overrule the Secretary's invocation of that privilege. This is especially the case because the party opposing the privilege bears the burden of showing that there is a "compelling need for the information that outweighs the need for confidentiality." *United States v. Malik*, Case No. 15-cv-9092-CM-TJJ, 2016 WL 3167307, at *10 (D. Kan. June 7, 2016) (citation modified). This, in turn, requires a separate balancing test based on the ten factors articulated in *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973). *See Grimes v. Bessner*, Case No. 17-cv-12860, 2017 WL 5731765, at *2 (E.D. Mich. Nov. 28, 2017) (Drain, J.) (applying the ten *Frankenhauser* factors to

determine whether the investigative files privilege (e.g., "the qualified law enforcement privilege") is applicable); *Coughlin v. Lee*, 946 F.2d 1152, 1160 (5th Cir. 1991) (same).  And though some of the *Frankenhauser* factors are similar to those balanced in an evaluation of the informant's privilege, the two privileges are separate and distinct.  *See Battle Fish*, Doc. No. 64, at *4 n.1.

The Court will not make arguments on Defendants' behalf.  As they did not address or even refer to the investigative files privilege, Defendants would not be entitled to much of the relief they seek even if their arguments on the informant's privilege succeeded.

## III.    CONCLUSION

For the above-stated reasons, Defendants' *Motion to Compel* (ECF No. 38) is **DENIED**.

## IT IS SO ORDERED.

The parties here may object to and seek review of this Order, but are required to file any objections within 14 days of service as provided for in Federal Rule of Civil Procedure 72(a) and Local Rule 72.1(d).  A party may not assign as error any defect in this Order to which timely objection was not made.  Fed. R. Civ. P. 72(a).  Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection.  When an objection is filed to a magistrate judge's ruling on a non-dispositive motion, the ruling remains in

effect unless it is stayed by the magistrate judge or a district judge.  E.D. Mich.

Local Rule 72.2.


Date: November 19, 2025                         s/Curtis Ivy, Jr.
                                                Curtis Ivy, Jr.
                                                United States Magistrate Judge